EXHIBIT A-1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

STEVEN WENZEL, on behalf of
himself and on behalf of all others
similarly situated,

      **Plaintiff,**

**v.**                          **CASE NO.:**

**SAMSUNG ELECTRONICS
AMERICA, INC.,**

      **Defendant.**

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Named Plaintiff, Steven Wenzel ("Plaintiff"), by and through undersigned counsel, and on behalf of himself, the Putative Class set forth below, brings the following Class Action as of right against Defendant, Samsung Electronics America, In. ("Defendant").

## NATURE OF THE CASE

1.    Plaintiff brings this action, individually and on behalf of all others similarly situated whose personal and non-public information, including name, contact and demographic information, date of birth, and product registration information were compromised in a massive security breach of Defendant's computer servers that was allegedly discovered on August 4, 2022 (the "Data Breach"), but not disclosed by Defendant until September 2, 2022.

2.    As alleged herein, Defendant's failure to implement or maintain adequate data security measures for personal information directly and proximately caused injuries to Plaintiff and the Class.

3.      Defendant failed to take reasonable steps to employ adequate security measures or to properly protect sensitive Personally Identifiable Information ("Personal Information" or "PII") despite well-publicized data breaches at large national retail and restaurant chains in recent years, including Arby's, Wendy's, Target, Chipotle, Home Depot, Sally Beauty, Harbor Freight Tools, P.F. Chang's, Dairy Queen, and Kmart.

4.      Despite these numerous and high-profile data breaches including the recent high-profile hack of credit bureau Equifax that exposed the personal data of hundreds of millions of Americans, and the ever-evolving hack of Facebook's user data and information, Defendant failed to implement basic security measures such as a firewall, encryption, and other standard data management practices to prevent unauthorized access to this information.

5.      As has been revealed in these recent high profile data breaches, hackers and other nefarious actors use this information to engage in social engineering and other tactics to gain access to financial and other valuable accounts; financial institutions and other organizations routinely verify a user's identity with these details to reset passwords, change mailing addresses, and otherwise permit someone to access and change details of their accounts.

6.      Citizens from across the United States have suffered real and imminent harm as a direct consequence of Defendant's conduct, which includes: (a) refusing to take adequate and reasonable measures to ensure its data systems, as well as the data stored therein, were protected; (b) refusing to take available steps to prevent the breach from happening; (c) failing to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard Personal Information; and (d) failing to provide timely and adequate notice of the data breach.

7.     The Data Breach was the inevitable result of Defendant's inadequate data security measures and cavalier approach to data security. Despite the well-publicized and ever-growing threat of security breaches involving payment card networks and systems, and despite the fact that these types of data breaches were and are occurring across retail and hospitality industries, Defendant failed to ensure that it maintained adequate data security measures causing Plaintiff Personal Information to be stolen.

8.     As a direct and proximate consequence of Defendant's negligence, a massive amount of customer information was stolen from Defendant. Upon information and belief, Defendant's Data Breach compromised the Personal Information of thousands (if not more) of Defendant's customers and former employees. Victims of the Data Breach have had their Personal Information compromised, had their privacy rights violated, been exposed to the increased risk of fraud and identify theft, lost control over their personal and financial information, and otherwise been injured.

9.     As such, Plaintiff, individually and on behalf of the members of the Class he seeks to represent, brings this action against Defendant. Plaintiff asserts claims for himself and on behalf of a nationwide class of consumers for Defendant's negligence and negligence *per se*. Plaintiff seeks monetary damages, declaratory and injunctive relief, and fees and costs.

## JURISDICTION AND VENUE

10.     This is an action for damages in excess of $30,000.00, exclusive of interest, fees, and costs, for Defendant's failure to safeguard Plaintiff's, and the putative class defined herein, Personal Information.

11.     Venue is proper in Hillsborough County, Florida, because the events giving rise to these claims as to the Named Plaintiff arose in this County.

12.     This Court has personal jurisdiction over Defendant under the Florida Long Arm Jurisdiction Act, Fla. Stat. Section 48.193.

13.     Furthermore, this Court's exercise of personal jurisdiction over Defendant is constitutionally sound. Through its operations in Tampa, Florida, in Hillsborough County, Defendant has established sufficient minimum contacts with the State of Florida to make it reasonably foreseeable that Defendant could be sued in Florida. Defendant will suffer no unfair prejudice from the exercise of this Court's personal jurisdiction, which serves the interests of justice in this case.

14.     Plaintiff resides in Tampa, Florida, and purchased a Samsung electronic device (a Samsung television) in Tampa, Florida. A substantial part of Plaintiff's claims arose in Tampa, Florida, where Defendant regularly conducts business.

**PARTIES**

15.     Plaintiff is a resident of Hillsborough County, Florida.  Plaintiff is a customer of Defendant as a result of Samsung TV he purchased within the class period.  Additionally, Plaintiff's Personal Information was exposed in the Data Breach, as evidenced by Exhibit A, a copy of the Data Breach notice sent out by Defendant.

16.     Defendant Samsung Electronics is a South Korean-based company that operates the largest smartphone and television manufacturer in the world.

17.     Defendant is headquartered in South Korea, but has a United States headquarters located in San Jose, California.  However, Defendant does substantial business in Florida, including in Tampa, Florida which lies in Hillsborough County and within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS
### Defendant's Data Breach

18.     On September 2, 2022, Plaintiff received notification from Defendant information

him, "Samsung recently discovered a cybersecurity incident that affected some of your

information. In late July 2022, an unauthorized third party acquired information from some of

Samsung's U.S. systems. On or around August 4, 2022, we determined through our ongoing

investigation that personal information of certain customers was affected." (Exhibit A).

19.     A copy of the September 2, 2022, notification letter from Defendant to Plaintiff is

attached hereto as Exhibit A.

20.     Remarkably, this is the second data breach Defendant's customers were subjected

to just this year, making Samsung's inactions, negligence, and overall abject failure to protect

customer information from the July of 2022 Data Breach even more egregious.

21.     More specifically, in March 2022, Samsung disclosed the first breach "after it was

hit by an attack conducted by the data extortion group Lapsus$.  Threat actors had access to internal

company data, including the source code of Galaxy models.  The Lapsus$ gang claimed to have

stolen a huge trove of sensitive data from Samsung Electronics and leaked 190GB of alleged

Samsung data as proof of the hack.  The gang announced the availability of the sample data on its

Telegram channel and shared a Torrent file to download it. They also shared an image of the source

code included in the stolen data."   https://securityaffairs.co/wordpress/135241/data-

breach/samsung-second-data-breach-2022.html, last accessed September 4, 2022.

22.     Plaintiff and putative class members whom he seeks to represent had their personal

and very private information invaded by the "unauthorized individual(s")" referenced in

Defendant's September 2, 2022 e-mail, including but not limited to their names, contact and

demographic information, and even dates of birth.  This information should have been protected

5

from invasion, but Defendant's deficient data-security program allowed this information to be invaded injuring Plaintiff and the putative class members whom he seeks to represent.

23.     The law of negligence provides standards for determining whether an act or practice is unfair, so a person, partnership, or corporation -- like Defendant here -- that negligently infringes a consumer interest protected against unintentional invasion may be held accountable.

### Industry Standards Regarding the Protection of Personal Information

24.     Defendant knew of its obligation to take reasonable measures to protect the Personal Information it held in its databases. For example, Defendant's databases were previously breached in March of 2022, yet Defendant failed to take appropriate remedial action.

25.     Additionally, Defendant was well-aware of the likelihood and repercussions of cyber security threats, including data breaches, having observed numerous other well-publicized data breaches involving major corporations over the last few years alone—including Equifax and Facebook— as well as the numerous other similar data breaches preceding those blockbuster breaches.

26.     In September 2015, credit reporting agency Experian acknowledged that an unauthorized party accessed one of its servers containing the names, addresses, dates of birth, driver's license, and additional Personal Information of more than 15 million consumers over a period of two years.

27.     In March 2018, numerous media and news outlets broke blockbuster stories concerning Cambridge Analytica's exfiltration of user data from Facebook's platform.

28.     Following the Equifax data breach, Senator Elizabeth Warren commissioned an investigation and, in February 2018, Senator Warren's office released the results of the 5-month investigation, setting forth a number of findings regarding Equifax's data breach, including the

6

inadequate data security practices that contributed to the data breach (the "Warren Report"). Senator Warren's investigation revealed that the Equifax data breach was made possible because Equifax adopted weak cyber security measures that failed to protect consumer data and information falling within the Personal Information at issue in this Class Action.

29.     Senator Warren consulted with industry experts, and the Warren Report concluded that companies that hold large amounts of sensitive data—including Personal Information at issue here—should have multiple layers of cyber security, including: (a) frequently updated tools to prevent hackers from breaching their systems; (b) controls that limit hackers' ability to move throughout their systems in the event of an initial breach; (c) restrictions on hackers' ability to access sensitive data in the event of an initial breach; and (d) procedures to monitor and log all unauthorized access in order to stop the intrusion as quickly as possible.

30.     Much like Defendant, Senator Warren warned that "Despite collecting data on hundreds of millions of Americans without their permission, Equifax failed to fully and effectively adopt any of these four security measures."

31.     Other cyber security analysts also found additional failures in Equifax's security measures, including failure to make use of firewalls that serve as a second line of defense.

32.     Despite these well-publicized Senate and other expert reports, Defendant failed to heed the recommendations, and inexplicably left its server—and the Personal Information which rested thereon—vulnerable and available to even the most basic cyberattack.

33.     The information contained in the unsecured database subject to this Data Breach included people's names and social security numbers.

34.     This Personal Information was compromised due to Defendant's acts and omissions, as well as its failures to properly protect and secure the Personal Information, despite

7

being aware of recent data breaches impacting other information and data gatherers, including Facebook, Equifax, and other prominent companies.

35.     In addition to Defendant's failure to prevent the Data Breach, Defendant also failed to detect the Data Breach and realize this Personal Information remained publicly accessible and unencrypted for weeks, if not longer.

36.     Hackers and other nefarious actors, therefore, had weeks—if not longer—to collect this Personal Information unabated. During this time, Defendant failed to recognize the failure to protect this Personal Information. Timely action by Defendant likely would have significantly reduced the consequences of the Data Breach. Instead, Defendant took time to realize this Personal Information remained public and unsecured and, thus, contributed to the scale of the Data Breach and the resulting damages.

37.     The Data Breach occurred because Defendant failed to implement adequate data security measures to protect its database and computer systems from the potential dangers of a data breach, and failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Personal Information compromised in the Data Breach.

38.     The Data Breach was caused and enabled by Defendant's knowing violation of its obligations to abide by best practices and industry standards in protecting Personal Information.

**The Defendant Data Breach Caused Harm and Will Result in Additional Fraud**

39.     Without detailed disclosure to the unknown number of affected people, including Plaintiff, the Nationwide Class members, these people have been left exposed, unknowingly and unwittingly, for months to continued misuse and ongoing risk of misuse of their Personal Information without being able to take necessary precautions to prevent imminent harm.

8

40.     The ramifications of Defendant's failures to keep Plaintiff's, the Nationwide Class members' Personal Information secure are severe.

41.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[18]

42.     Personal Information is a valuable commodity to identity thieves once the information has been compromised. As the FTC recognizes, once identity thieves have Personal Information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."

43.     Identity thieves can use personal information, such as that of Plaintiff, the other Nationwide Class members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's Personal Information to obtain government benefits; or filing a fraudulent tax return using the victim's Personal Information to obtain a fraudulent refund.

44.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014

45.     There may be a time lag between when harm occurs versus when it is discovered, and also between when Personal Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

46.     Thus, Plaintiff, the other Nationwide Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Nationwide Class Members are incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

**<u>Plaintiff and the other Nationwide Class Members Suffered Damages</u>**

47.     Plaintiff, the other Nationwide Class members' Personal Information is private and sensitive in nature, and was left inadequately protected, if not completely unprotected, by Defendant. Defendant did not obtain Plaintiff, the other Nationwide Class members' consent to disclose their Personal Information to any other person or entity, as required by applicable law and industry standards.

48.     The Data Breach was a direct and proximate result of Defendant's failure to properly safeguard and protect Plaintiff, the other Nationwide Class members' Personal Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Defendant's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security

and confidentiality of Plaintiff, the other Nationwide Class members' Personal Information to protect against reasonably foreseeable threats to the security or integrity of such information.

49.     Defendant had the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of Personal Information exfiltrations, as well as several years of well-publicized data breaches.

50.     Had Defendant remedied the deficiencies in its database and computer systems, followed industry guidelines, and adopted security measures recommended by experts in the field, Defendant would not have placed the Personal Information unencrypted on a public server, and instead would have prevented the dissemination of Personal Information and, ultimately, the theft of users' Personal Information.

51.     As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff, the other Nationwide Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, changing the information used to verify their identity to information not subject to this Data Breach, and filing police reports. This time has been lost forever and cannot be recaptured. In all manners of life in this country, time has constantly been recognized as compensable, for many consumers it is the way they are compensated, and even if retired from the work force, consumers should be free of having to deal with the consequences of a company's slippage, as is the case here.

11

52.     Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff, the other Nationwide Class members' Personal Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

(a)     theft of their Personal Information and financial information;

(b)     costs for credit monitoring services;

(c)     unauthorized charges on their debit and credit card accounts; the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their credit/debit card and Personal Information being placed in the hands of criminals and already misused via the sale of Plaintiff and Class members' Personal Information on the Internet black market;

(d)     the untimely and inadequate notification of the Data Breach;

(e)     the improper disclosure of their Customer Data;

(f)     loss of privacy;

(g)     ascertainable losses in the form of out-of-pocket expenses and the value of

(h)     their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

(i)     ascertainable losses in the form of deprivation of the value of their Personal Information, for which there is a well-established national and international market;

(j)     ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

(k)     loss of use of, and access to, their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and,

(l)     the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised

12

accounts, changing the information used to verify their identity to information not subject to this Data Breach, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

53.     Although the Personal Information of Plaintiff, the other Nationwide Class Members has been stolen, Defendant continues to hold Personal Information of the affected individuals, including Plaintiff's, the other Nationwide Class members'. Particularly, because Defendant has demonstrated an inability to prevent a data breach or stop it from continuing— even after being detected and informed of the impermissible dissemination—Plaintiff, the other Nationwide Class members, have an undeniable interest in ensuring their Personal Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further disclosure and theft.

## CLASS ALLEGATIONS

54.     Pursuant to the Florida Rules of Civil Procedure, Plaintiff asserts that common law claims against Defendant for negligence, negligence *per se*, declaratory and injunctive relief on behalf of himself and the following nationwide class ("the Nationwide Class" or the "Class"):

> **NATIONWIDE CLASS**: All residents of the United States whose Personal Information was contained in the publicly-accessible database and compromised as a result of the Data Breach.

55.     **Numerosity**: The members of the Nationwide Class are so numerous and geographically dispersed that individual joinder of all Nationwide Class is impracticable. Plaintiff is informed and believes—based on the size of the exposed database—that there are possibly hundreds of thousands of affected persons

56.     Those individuals' names and addresses are available from Defendant's records, and Nationwide Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

13

57.   **Typicality**: Plaintiff's claims are typical of the other Nationwide Class members' claims because Plaintiff and the other Nationwide Class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

58.   **Adequacy**: Plaintiff is an adequate class representatives because his interests do not conflict with the interests of the other Nationwide Class members who he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The Nationwide Class Members' interests will be fairly and adequately protected by Plaintiff's and her counsel.

59.   **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Nationwide Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Nationwide Class members to individually seek redress for Defendant's wrongful conduct. Even if the Nationwide Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

60.   **Commonality and Predominance**: This action involves common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

14

(a)     Whether Defendant knew or should have known that its database, and the Personal Information stored thereon, was publicly-accessible;

(b)     Whether Defendant knew or should have known that its database, and the Personal Information stored thereon, was unencrypted;

(c)     Whether Defendant failed to take adequate and reasonable measures to ensure the database was protected;

(d)     Whether Defendant failed to take available steps to prevent and stop the Data Breach from happening;

(e)     Whether Defendant failed to disclose the material facts that it did not have adequate computer systems and security practices to safeguard the Personal Information;

(f)     Whether Defendant failed to provide timely and adequate notice of the Data Breach;

(g)     Whether Defendant owed a duty to Plaintiff and the other Nationwide Class Members to protect their Personal Information and to provide timely and accurate notice of the Data Breach to Plaintiff and the other Nationwide Class Members;

(h)     Whether Defendant breached its duties to protect the Personal Information of Plaintiff, the other Nationwide Class Members by failing to provide adequate data security and by failing to provide timely and accurate notice to Plaintiff, the other Nationwide Class members of the Data Breach;

(i)     Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the unauthorized access and/or theft of millions of consumers' Personal Information;

(j)     Whether Defendant's conduct renders it liable for negligence, negligence per se, and unjust enrichment;

(k)     Whether, as a result of Defendant's conduct, Plaintiff and the other Nationwide Class Members face a significant threat of harm and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled; and

(l)     Whether, as a result of Defendant's conduct, Plaintiff and the other Nationwide Class Members are entitled to injunctive, equitable, declaratory, and/or other relief, and, if so, the nature of such relief.

15

61.     **Declaratory and Injunctive Relief**: The prosecution of separate actions by individual Nationwide Class members would create a risk of inconsistent or varying adjudications with respect to individual Nationwide Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications, which would be dispositive of the interests of other Nationwide Class members and impair their interests. Defendant has acted and/or refused to act on grounds generally applicable to the Nationwide Class, making final injunctive relief or corresponding declaratory relief appropriate.

### COUNT I – NEGLIGENCE
**(Asserted by Plaintiff, individually, and on behalf of the Nationwide Class)**

62.     Plaintiff, individually and on behalf of the other Nationwide Class members, repeats and realleges Paragraphs 1 through 64, as if fully alleged herein.

63.     Defendant owed a duty to Plaintiff and the other Nationwide Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure that Plaintiff's and the other Nationwide Class members' Personal Information in Defendant's possession was adequately secured and protected. Defendant further owed a duty to Plaintiff and the other Nationwide Class members to implement processes that would detect a breach of its security systems in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

64.     Defendant owed a duty to Plaintiff and the other Nationwide Class members to provide security, including consistent with industry standards and requirements, to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the

16

Personal Information of Plaintiff and the other Nationwide Class about whom Defendant collected, maintained, and used such information.

65.     Defendant owed a duty of care to Plaintiff and the other Nationwide Class and members because they were foreseeable and probable victims of any inadequate security practices. Defendant solicited, gathered, and stored the Personal Information provided by Plaintiff and the other Nationwide Class members to facilitate its products to customers. Defendant knew it inadequately safeguarded such information on its computer systems and knew or should have known that such information was publicly-accessible and not subject to any reasonable data security measures.

66.     Defendant owed a duty of care to Plaintiff and the other Nationwide Class members under Fla. Stat. § 501.171, which requires that "[a] covered entity shall give notice to each individual in this state whose personal information was, or the covered entity reasonably believes to have been, accessed as a result of the breach. Notice to individuals shall be made as expeditiously as practicable and without unreasonable delay, taking into account the time necessary to allow the covered entity to determine the scope of the breach of security, to identify individuals affected by the breach, and to restore the reasonable integrity of the data system that was breached, but no later than 30 days after the determination of a breach or reason to believe a breach occurred…." Fla. Stat. § 501.171(4)(a).   Defendant solicited, gathered, and stored the Personal Information provided by Plaintiff and the other Nationwide Class members to facilitate its products to customers. Defendant knew it inadequately safeguarded such information on its computer systems and knew or should have known that such information was publicly-accessible and not subject to any reasonable data security measures.

67.     Upon information and belief, based on the attached September 2, 2022 notice indicating that on "around August 4, 2022, we determined through our ***ongoing investigation*** that personal information of certain customers was affected," meaning Defendant likely had reason to believe a breach occurred prior August 4, 2022 (and, thus, waited longer than 30 days to inform Plaintiff and the class of the breach), Defendant violated Fla. Stat. § 501.171(4)(a) by waiting in excess of 30 days to notify Plaintiff and the class members of the data breach.  (Emphasis added).

68.     Defendant's duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair...practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect Personal Information by companies such as Defendant. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, individual states have enacted statutes based upon the FTC Act that also create a duty.

69.     Defendant knew that a breach of its systems would cause damages to Plaintiff and the other Nationwide Class members, and Defendant had a duty to adequately protect such sensitive Personal Information.

70.     Defendant owed a duty to timely and accurately disclose to Plaintiff and the other Nationwide Class members that their Personal Information had been or was reasonably believed to have been compromised. Timely disclosure was required, appropriate, and necessary so that, among other things, Plaintiff and the other Nationwide Class members could take appropriate measures to cancel or change usernames and passwords on compromised accounts, change the information used to verify their identity to information not subject to this Data Breach, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial

18

institutions that issue their credit or debit cards, obtain credit monitoring services and take other steps to mitigate or ameliorate the damages caused by Defendant's misconduct.

71.     Defendant knew, or should have known, of the risks inherent in collecting and storing the Personal Information of Plaintiff and the other Nationwide Class and Subclass members, and of the critical importance of providing adequate security of that information.

72.     Defendant's own conduct also created a foreseeable risk of harm to Plaintiff and the other Nationwide Class members. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent and stop the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping and maintenance of the Personal Information of Plaintiff and the other Nationwide Class members.

73.     Defendant breached the duties it owed to Plaintiff and the other Nationwide Class members by failing to exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the Personal Information of Plaintiff and the other Nationwide Class members.

74.     Defendant breached the duties it owed to Plaintiff and the other Nationwide Class members by failing to properly implement technical systems or security practices that could have prevented the dissemination and loss of the Personal Information at issue.

75.     Defendant breached the duties it owed to Plaintiff and the other Nationwide Class members by failing to properly maintain their sensitive Personal Information. Given the risk involved and the amount of data at issue, Defendant's breach of its duties was entirely unreasonable.

76.     Defendant breached its duties to timely and accurately disclose that Plaintiff's and the other Nationwide Class members' Personal Information in Defendant's possession had been or was reasonably believed to have been, stolen or compromised.

77.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the other Nationwide Class members, their Personal Information would not have been compromised.

78.     The injury and harm suffered by Plaintiff and the other Nationwide Class and members, as set forth above, was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Nationwide Class and members' Personal Information within Defendant's possession. Defendant knew or should have known that its systems and technologies for processing, securing, safeguarding and deleting Plaintiff's and the other Nationwide Class members' Personal Information were inadequate, publicly accessible, and vulnerable to being breached by hackers.

79.     Plaintiff and the other Nationwide Class members suffered injuries and losses described herein as a direct and proximate result of Defendant's conduct resulting in the Data Breach, including Defendant's lack of adequate reasonable and industry standard security measures. Had Defendant implemented such adequate and reasonable security measures, Plaintiff and the other Nationwide Class members would not have suffered the injuries alleged, as the Data Breach would likely have not occurred. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and the other Nationwide Class members have suffered injury and the significant risk of harm in the future, and are entitled to damages in an amount to be proven at trial.

## COUNT II – NEGLIGENCE PER SE
**(Asserted by Plaintiff, individually, and on behalf of the Nationwide Class)**

80.    Plaintiff, individually and on behalf of the other Nationwide Class members, repeats and realleges Paragraphs 1 through 64, as if fully alleged herein.

81.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair...practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies—such as Defendant—of failing to use reasonable measures to protect Personal Information. Various FTC publications and orders also form the basis of Defendant's duty.

82.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Personal Information and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Personal Information it obtained and stored and the foreseeable consequences of a data breach.

83.    Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

84.    The Nationwide Class members are within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect, as they are engaged in trade and commerce, and Defendant bears primary responsibility for reimbursing consumers for fraud losses. Plaintiff and absent class members are consumers.

85.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff, the Nationwide Class, and the alternative state specific class members.

21

86.     As a direct and proximate result of Defendant's negligence per se, the Plaintiff, the Nationwide Class and the alternative state specific class members have suffered and continue to suffer injury, including but not limited to:

(a)     theft of their Personal Information and financial information;

(b)     costs for credit monitoring services;

(c)     unauthorized charges on their debit and credit card accounts;

(d)     the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their credit/debit card and Personal Information being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class members' Personal Information on the Internet black market;

(e)     the untimely and inadequate notification of the Data Breach;

(f)     the improper disclosure of their Customer Data;

(g)     loss of privacy;

(h)     ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

(i)     ascertainable losses in the form of deprivation of the value of their Personal Information, for which there is a well-established national and international market;

(j)     ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

(k)     loss of use of, and access to, their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and

(l)     the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, changing the information used to verify their identity to

information not subject to this Data Breach, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

## COUNT III – DECLARATORY AND INJUNCTIVE RELIEF
### (Asserted by Plaintiff, individually, and on behalf of the Nationwide Class)

87.     Plaintiff, individually and on behalf of the other Nationwide Class members, repeats and realleges Paragraphs 1 through 64, as if fully alleged herein.

88.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

89.     An actual controversy has arisen in the wake of the Data Breach regarding Defendant's common law, statutory, and other duties to reasonably safeguard Plaintiff's, the other Nationwide Class members', and others' Personal Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff, the other Nationwide Class members, and others from further data breaches that compromise their Personal Information. Plaintiff alleges that Defendant's data security measures were and remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of their Personal Information, and remain at imminent risk that further compromises of his Personal Information will occur in the future.

90.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

91.     Defendant owed and continues to owe a legal duty to secure Plaintiff's, the other Nationwide Class members', and others' Personal Information, and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

23

92.     Defendant continues to breach its legal duties by failing to employ reasonable measures to secure Plaintiff's, the other Nationwide Class members', and others' Personal Information.

93.     The Court also should issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect Plaintiff's, the other Nationwide Class members', and others' Personal Information.

94.     If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendant's database and other computer systems. The risk of another such data breach is real, immediate, and substantial.

95.     The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs at Defendant, Plaintiff will likely be subjected to substantial identify theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable data security measures is relatively minimal, and Defendant has pre-existing legal obligations to employ such measures.

96.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach of Defendant's database, thus eliminating the additional injuries that would result to Plaintiff, the other Nationwide Class members, and others whose Personal Information would be further compromised.

## PRAYER FOR RELIEF

***WHEREFORE***, Plaintiff, individually and on behalf of the other Nationwide Class members, respectfully requests the Court enter judgment in his favor and against Defendant, as follows:

(a)     That the Court certify this action as a class action, proper and maintainable pursuant to the Florida Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's attorneys as Class Counsel;

(b)     That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

(c)     That the Court award Plaintiff and the other Nationwide Class Members actual, direct (where actual and direct damages are separate under the law), compensatory, consequential, and general damages in an amount to be determined at trial;

(d)     That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits Defendant received as a result of its unlawful acts, omissions, and practices;

(e)     That the Court award statutory damages, and punitive or exemplary damages, to the extent permitted by law;

(f)     That the unlawful acts alleged in this Complaint be adjudged and decreed to be negligent, negligent per se, and unjust enrichment;

(g)     That Plaintiff be granted the declaratory relief sought herein;

(h)     That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, including fees and expenses;

(i)     That the Court award pre- and post-judgment interest at the maximum legal rate; and

(j)     That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Putative Class demand a trial by jury for all issues so triable.

Dated this 4th day of September, 2022.

Respectfully submitted,

**BRANDON J. HILL**
Florida Bar Number: 0037061
**LUIS A. CABASSA**
Florida Bar Number: 0053643
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: (813) 379-2565
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: gnichols@wfclaw.com
**Attorneys for Plaintiff**

26

# EXHIBIT A

**From:** Samsung <samsung@innovations.samsungusa.com>
**Date:** September 2, 2022 at 1:05:27 PM EDT
**To:** "Steven G. Wenzel" ████████████████████
**Subject: An important notice regarding customer information**
**Reply-To:** Samsung <noreply_samsung@sea.samsung.com>

---

SAMSUNG

---

Dear Valued Customer,

At Samsung, security is a top priority. We are reaching out to inform you that Samsung recently discovered a cybersecurity incident that affected some of your information.

In late July 2022, an unauthorized third party acquired information from some of Samsung's U.S. systems. On or around August 4, 2022, we determined through our ongoing investigation that personal information of certain customers was affected.

We have taken actions to secure the affected systems, and have engaged a leading outside cybersecurity firm and are coordinating with law enforcement. We want to assure our customers that the issue did not impact Social Security numbers or credit and debit card numbers, but in some cases, may have affected information such as name, contact and demographic information, date of birth, and product registration information. The information affected for each relevant customer may vary.

At Samsung, we value the trust our customers place in our products and services - trust that we have built up over many years. By working with industry - leading experts, we will further enhance the security of our systems - and your personal information - and work to maintain the trust you have put into the Samsung brand for more than 40 years.

We regret any inconvenience this may cause you and appreciate your trust in us. We have set up an FAQ page on our website for additional questions and answers along with recommended actions.

If you'd like to check your credit report, you are entitled under U.S. law to one free credit report annually from each of the three major nationwide credit reporting agencies. More information can be found below.

If you have any questions regarding this issue, please visit our website at

**www.samsung.com/us/support/securityresponsecenter**.

To order your free credit report, visit **www.annualcreditreport.com** or call toll-free at
1 877 322 8228.